25-894-cv
*Barberan v. Town of Eastchester et al.*

# In the
# United States Court of Appeals
## For the Second Circuit

---

AUGUST TERM, 2025

ARGUED: FEBRUARY 3, 2026
DECIDED: OCTOBER 27, 2026

No. 25-894-cv

ANTHONY BARBERAN,
*Plaintiff-Appellant*,

*v.*

TOWN OF EASTCHESTER, TIMOTHY BONCI, Individually and in His Official Capacity as Eastchester Chief of Police, JEFFREY HUNTER, Individually and in His Official Capacity as Eastchester Police Lieutenant,
*Defendants-Appellees*.*

---

Appeal from the United States District Court
for the Southern District of New York.

---

Before:

WALKER, PARKER, AND BIANCO, *Circuit Judges*.

---

Anthony Barberan sued the Town of Eastchester, former Police

* The Clerk of Court is respectfully directed to amend the caption as set forth above.

Chief Timothy Bonci, and former Police Lieutenant Jeffrey Hunter (collectively, the "Town") in the District Court for the Southern District of New York (Victoria Reznick, *M.J.*) to recover for harm he allegedly suffered while employed with the Town of Eastchester Police Department ("Department"), including his ultimate termination. In the operative Second Amended Complaint ("SAC"), Barberan asserted claims for discrimination based on his Hispanic national origin and for retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1983 ("Section 1983"), and the New York State Human Rights Law ("NYSHRL"). The district court concluded that Barberan failed to establish a prima facie case of discrimination or retaliation, failed to show that the Town's reasons for the adverse employment actions were pretextual and that the real reason was discrimination, and granted summary judgment for the Town. *See Barberan v. Town of Eastchester*, No. 19-cv-10983-VR, 2025 WL 962815, at *16, *18 (S.D.N.Y. Mar. 31, 2025).

On appeal, Barberan challenges the district court's grant of summary judgment to the Town only with respect to his Section 1983 and NYSHRL discrimination claims. And as to those discrimination claims, his challenge is limited to his termination (the other claimed adverse actions were abandoned). For the reasons stated below, the district court's judgment is AFFIRMED.

---

MICHAEL H. SUSSMAN, Sussman & Associates, Goshen, New York, *for* Plaintiff-Appellant.

BRIAN S. SOKOLOFF (Heather P. Harrison, Farrell Fritz, P.C., Uniondale, New York, *on the brief*), Sokoloff Stern LLP, Carle Place, New York, *for* Defendants-Appellees.

JOHN M. WALKER, JR., *Circuit Judge*:

Anthony Barberan sued the Town of Eastchester, former Police Chief Timothy Bonci, and former Police Lieutenant Jeffrey Hunter (collectively, the "Town") in the District Court for the Southern District of New York (Victoria Reznick, *M.J.*)[1] to recover for harm he allegedly suffered while employed with the Town of Eastchester Police Department ("Department"), including his ultimate termination. In the operative Second Amended Complaint ("SAC"), Barberan asserted claims for discrimination based on his Hispanic national origin and for retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1983 ("Section 1983"), and the New York State Human Rights Law ("NYSHRL"). The district court concluded that Barberan failed to establish a prima facie case of discrimination or retaliation, failed to show that the Town's reasons for the adverse employment actions were pretextual and that the real reason was discrimination, and granted summary judgment for the Town. *See Barberan v. Town of Eastchester*, No. 19-cv-10983-VR, 2025 WL 962815, at *16, *18 (S.D.N.Y. Mar. 31, 2025). On appeal, Barberan challenges the district court's grant of summary judgment to the Town only with respect to his Section 1983 and NYSHRL discrimination claims.[2] And as to those discrimination claims, his challenge is limited to his termination (the other claimed adverse actions were abandoned).

[1] On September 13, 2022, the parties consented to proceed before a magistrate judge.

[2] Barberan has affirmatively waived any challenge to the district court's grant of summary judgment on his Title VII discrimination and retaliation claims, and his Section 1983 and NYSHRL retaliation claims. *See* Appellant's Br. at 2 n.1.

For the reasons set forth below, we affirm the judgment of the district court.

## BACKGROUND

In the operative second amended complaint, Barberan claims three adverse employment actions as evidence of discrimination on the basis of his Hispanic national origin. First, in February 2018, the Department denied his applications for a position in either a drug task force or a traffic car unit. Second, in October 2019, Barberan was docked three vacation days following his second failure to properly search an arrestee. Third, in November 2021, Barberan was terminated for, among other things, lying to a superior officer, making false entries in the official police blotter, and lying during the investigative hearing into his third failure to properly search an arrestee.[3]

### I. Factual History

Anthony Barberan was born and raised in Yonkers, New York, and identifies racially as Caucasian with a Hispanic national origin because his father was born in Ecuador.

Between July 30, 2012 and his termination on November 16, 2021, Barberan served as a police officer in the Department. During that time, he was supervised by then-Lieutenant Jeffrey Hunter ("Lieutenant Hunter") and by then-Chief Timothy Bonci ("Chief Bonci"). Lieutenant Hunter retired in August 2020, and Chief Bonci

---

[3] Although the district court identified three adverse employment actions, *see* Special App'x at 29–30, on appeal, Barberan only challenges the district court's pretext finding for his termination, *see* Appellant's Br. at 2. He has thus abandoned any argument of whether the Town's stated reasons for the alleged adverse employment actions in 2018 and 2019 were pretextual. *See Debique v. Garland*, 58 F.4th 676, 684 (2d Cir. 2023) (per curiam).

retired in June 2022. In 2019, then-Lieutenant Joseph Rodriguez replaced Lieutenant Hunter as Barberan's superior and later succeeded Chief Bonci as Chief.

**A.** ***Barberan's Disciplinary History from 2013 to 2021***

Throughout his nine-year employment with the Department, despite numerous warnings and remediations, Barberan committed multiple offenses in violation of the Department's rules.

By 2014, Barberan had been placed in his first of three remedial trainings in response to his first failure to search an arrestee. The two subsequent remedial training programs resulted from, first, Lieutenant Hunter's concerns about Barberan's lack of professionalism during a 2015 traffic stop and, second, from Barberan's 2016 accidental discharge of a live taser in the Department's locker room.

By 2015, Barberan had begun receiving negative performance reviews from his supervisors, noting that Barberan "tend[ed] to lack maturity[] and c[ould] be very negative." Joint App'x at 1452–53. In his March 14, 2016, review of Barberan's performance for the calendar year 2015, the sergeant who supervised the patrol unit—who is not a party in this case—suggested that Barberan needed improvement in acceptance of direction, acceptance of responsibility, professional development, and productivity. In Chief Bonci's August 22, 2016, email to board members of the Police Union and in Lieutenant Hunter's May 5, 2023, deposition, both officers reported that Barberan had received one of the worst evaluations in the history of the Department, leading to their meeting with Barberan to privately express his need for improvement. After this performance review, Chief Bonci placed Barberan on a performance improvement plan, which was unsuccessful because Barberan failed to meet its minimum

standard. Barberan's subsequent performance evaluations also indicated low productivity as well as repeated issues with police uniform non-compliance. *See, e.g.*, Joint App'x at 1605 ¶¶ 129–31.

In 2014, 2019, and 2021, the Department investigated Barberan three times for failing to properly search an arrestee. In July 2014, Barberan was investigated for failing to remove an arrestee's belt and locate a razor blade on his person before placing the arrestee in a cell. To resolve the investigation, Barberan entered a settlement agreement that provided that further instances of similar misconduct could result in Chief Bonci ordering his termination. Barberan also accepted the loss of four days of pay (which he does not claim as an adverse employment action on appeal). In July 2019, Barberan again neglected to properly search an arrestee by failing to remove a bandana, which the arrestee later used to attempt suicide by hanging. Following the ensuing investigation launched by then-Lieutenant Rodriguez, as a penalty, Barberan accepted Chief Bonci's proposal that he lose three vacation days (which Barberan claimed as an adverse employment action, albeit not on appeal). In January 2021, Barberan again failed to properly search an arrestee and neglected to locate drugs on him before placing him in a cell despite the fact that earlier that day Barberan found drugs on his person. This incident led to then-Lieutenant Rodriguez's further investigation into Barberan's conduct, which culminated in the termination hearing.

In advance of his termination hearing, the Department notified Barberan that he was being charged with insubordination, unlawful detention and search, and incompetence. Throughout Barberan's multi-day disciplinary hearing in June 2021, a hearing officer, who had previous experience in conducting such hearings but no prior involvement with Barberan, heard testimony from witnesses, including Barberan and then-Lieutenant Rodriguez, and viewed

video evidence of the arrest. The hearing officer's report not only found Barberan in violation of all three charges but also found that Barberan had repeatedly lied, first in an official police report that he prepared, then to a superior officer, and finally during his testimony at the hearing. The hearing officer recommended terminating Barberan, and the Town's Board adopted his recommendation. Barberan was subsequently terminated from the Department on November 16, 2021.

### *B. Lieutenant Hunter's Claimed Discriminatory Comments*

Several years before Barberan's 2021 termination and the commencement of this 2019 lawsuit, Barberan alleges that, in 2014 and 2015, Lieutenant Hunter made comments about the culture of Yonkers, a city neighboring Eastchester, that illustrated discriminatory animus against his Hispanic national origin.

Following the July 2014 investigation triggered by Barberan's initial failure to search an arrestee, Barberan alleges that Lieutenant Hunter suggested that he should not be a cop; that being raised in Yonkers "wasn't the best approach[;]" and that things were done differently in Eastchester. Joint App'x at 30 ¶¶ 44–45.

In September 2015, Lieutenant Hunter again met with Barberan, this time to discuss his communication with the public during traffic stops. Barberan alleges that Lieutenant Hunter criticized Barberan for speaking in informal slang to teenagers during a traffic stop, including by repeatedly using the slang phrase "you know what I'm sayin'[,]" rather than professional terminology. *Id*. at 31 ¶ 53. Lieutenant Hunter allegedly instructed Barberan to speak "properly." *Id*. According to Barberan, Lieutenant Hunter then stated that Barberan's "Yonkers ghetto doesn't add up to my Eastchester professional[,]" *id*. at 32 ¶ 54, and he purportedly showed

Barberan a video of a Black hip-hop artist with dreadlocks, dressed in baggy clothing and chains, and displaying his underwear, to exemplify how Barberan presented himself. Lieutenant Hunter then allegedly continued to make negative comments to Barberan, including: "Your attitude and ways are not how I want my officers to look and act." *Id.* at 32 ¶ 57. While Barberan was in remedial training following this discussion, Lieutenant Hunter allegedly continued to make statements like "this is what Yonkers does" and "this is how Yonkers trains its men[.]" *Id.* at 32 ¶ 58. Lieutenant Hunter later denied making these statements or showing this video, but, in rulings at summary judgment, we must take Barberan at his word. *See Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008) ("[T]he court is required to . . . draw all permissible factual inferences in favor of the party against whom summary judgment is sought.").

## II. Procedural History

Four years after these disparaging Yonkers comments, in November 2019, Barberan filed his first complaint in this case, and, in March of the following year, filed a first amended complaint. In both filings, Barberan identified as a member of a protected class, not because he was Hispanic, but because he was Caucasian. In these complaints, he alleged that he was discriminated against because he failed to conform to racial stereotypes. In neither complaint did Barberan claim Hispanic national origin, nor reference discrimination based on any national origin.

On October 7, 2022, Barberan filed the SAC, which is the operative complaint for this appeal. For the first time in a filing, and seven years after the disparaging Yonkers comments, Barberan now identified as being of "Hispanic descent[,]" Joint App'x at 26 ¶ 3, and that he is accordingly "a member of a protected class because he is

Hispanic[,]" *id*. at 54 ¶ 236, 58 ¶ 257. Barberan alleged that Lieutenant Hunter "criticized [Barberan] for not speaking and acting as he believes a Caucasian officer should[,]" *id*. at 30 ¶ 41, and had drawn negative inferences about Barberan because he was raised in Yonkers, *see id*. at 55 ¶ 243.

On the Town's motion for summary judgment, the district court held that Barberan did not establish a prima facie case of discrimination under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Specifically, the district court found that Barberan failed to "provide non-speculative evidence that Hunter's remarks [about Yonkers] were about [his] Hispanic national origin, . . . that any adverse employment actions he suffered were based on his Hispanic national origin . . . [or] evidence that Defendants even knew he was Hispanic [in 2014 and 2015] when these remarks were made." Special App'x at 31–32. Rather, the district court concluded that Lieutenant Hunter's comments about Yonkers could not lead a rational factfinder to an inference of national origin discrimination because "being raised in a specific domestic city, like Yonkers, [does not] automatically equate to being Hispanic." *Id*. at 33.

On April 11, 2025, Barberan filed a notice of appeal.

## DISCUSSION

We review the district court's grant of summary judgment *de novo* and will affirm if, after viewing the record in the light most favorable to the non-moving party, we find there are no genuine disputes of material fact. *See Holcomb*, 521 F.3d at 137; Fed. R. Civ. P. 56(a). "Summary judgment is appropriate even in discrimination

cases[.]" *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000), *cert. denied*, 540 U.S. 811 (2003).

Claims of discrimination brought under Section 1983 and the NYSHRL are subject to the *McDonnell Douglas* burden-shifting framework. *See Garcia v. Hartford Police Dep't*, 706 F.3d 120, 127 (2d Cir. 2013) (per curiam) (Section 1983); *Tolbert v. Smith*, 790 F.3d 427, 434 (2d Cir. 2015) (NYSHRL). Under this framework, a plaintiff must first establish a prima facie case by showing that "(1) he belonged to a protected class; (2) he was qualified for the position he held; (3) he suffered an adverse employment action; and (4) [] the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent." *Brown v. City of Syracuse*, 673 F.3d 141, 150 (2d Cir. 2012) (internal citation omitted). Once the plaintiff has established a prima facie case under *McDonnell Douglas* ("Step One"), "the burden shifts to the employer to articulate some legitimate, nondiscriminatory reason for its adverse action" ("Step Two"). *Bart v. Golub Corp.*, 96 F.4th 566, 570 (2d Cir. 2024) (internal quotation marks and citation omitted). "Upon that showing, the burden then shifts back to the plaintiff to prove that the employer's stated reason was pretext for discrimination" ("Step Three"). *Id.*

## I. The Absence of a Prima Facie Case

Barberan argues that the district court erred in concluding that there was no prima facie case and Barberan failed to make a prima facie showing by providing sufficient evidence to "give rise to an inference of discrimination" on the basis of his Hispanic national origin. *Weinstock*, 224 F.3d at 42. We agree with the district court, however, that Barberan failed to adduce evidence that could lead a

reasonable jury to find that he was discriminated against because of his Hispanic national origin.

As an initial matter, a plaintiff must allege his membership in a protected class and show the defendant's awareness of that membership. *See Tolbert*, 790 F.3d at 435. Where the record fails to indicate the requisite awareness of his membership in a protected class, "a plaintiff must adduce some evidence, whether direct or indirect, indicating a defendant's knowledge" of the protected characteristic. *See Woodman v. WWOR-TV, Inc.*, 411 F.3d 69, 83 (2d Cir. 2005). "[A] defendant's discriminatory intent cannot be inferred, even at the prima facie stage, from circumstances unknown to the defendant." *Id*. at 82.

Here, both Chief Bonci and Lieutenant Hunter disclaim any knowledge that Barberan was Hispanic. *See* Special App'x at 32 n. 17. And, the Town argued in the district court that Barberan was not Hispanic. Because Defendants deny knowledge of Barberan's Hispanic national origin at the time of the adverse employment actions, Barberan must give some direct or indirect evidence of their knowledge. Here, Barberan has failed to provide direct evidence of any Defendant's knowledge; rather, he cites to the same indirect evidence that the district court considered and rejected.[4] *Compare* Special App'x at 32 n.17, *with* Appellant's Br. at 3.

---

[4] This evidence includes: (1) Barberan's 2011 fingerprint response, on which he inconsistently identified as both Non-Hispanic and Hispanic, and (2) his Rule 56.1 statement claiming that he announced his Ecuadorian heritage in a 2016 union meeting with no corroborating proof that any Defendant was present. Further, the 2016 announcement would have occurred after Lieutenant Hunter's offending 2014 and 2015 remarks, so it cannot be evidence that Lieutenant Hunter knew of Barberan's Hispanic national origin when he made his remarks.

As below, Barberan asks us to infer that Defendants knew of Barberan's Hispanic national origin. We disagree. This inference requires pure speculation that, because Barberan grew up in Yonkers, he must be Hispanic. *See Woodman*, 411 F.3d at 82. The record is devoid of any evidence that the national origin of Yonkers residents is Hispanic. Because Barberan offers insufficient evidence of Defendants' knowledge of his Hispanic national origin, which is necessary to prove discrimination, we hold that Barberan has failed to establish a prima facie case and affirm the district court's grant of summary judgment on this basis.

Even if, contrary to the facts, Lieutenant Hunter, Chief Bonci, and the Town believed that Barberan was Hispanic, no rational factfinder would connect Lieutenant Hunter's comments about Yonkers' culture with discrimination based upon Hispanic national origin without more evidence to explain that nexus. We agree with the district court that "being from Yonkers is not a race or national origin for purposes of a discrimination claim[,]" and, absent non-speculative evidence that Lieutenant Hunter identified hailing from Yonkers as indicative of an Hispanic national origin, the district court correctly found that Barberan's argument on this point fails. *See* Special App'x at 33. In any event, even if we consider Lieutenant Hunter's 2014 and 2015 Yonkers-related comments from four years before the lawsuit was filed, at most, such comments would amount to only non-probative "stray remarks" that are "remote and oblique" from Barberan's adverse employment outcomes in 2018, 2019, and 2021. *Tomassi v. Insignia Fin. Group, Inc.*, 478 F.3d 111, 115 (2d Cir. 2007), *abrogated on other grounds by Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167 (2009).

We further agree with the district court that "[n]ot even [Barberan] seemed to think that his discrimination was based on his

Hispanic national origin." Special App'x at 32. Barberan did not claim discrimination based upon his self-declared Hispanic national origin in either of his 2018 or 2021 Equal Employment Opportunity Commission ("EEOC") charges or in his first two filed complaints in the district court.[5] Instead, in multiple filings, Barberan actively claimed discrimination based on his *Caucasian* race and for his failure to conform to *Caucasian* stereotypes. *See id*. at 32–33. If Barberan thought he was being discriminated against based on his *Hispanic* national origin, surely he would have said so at the outset. But, when directly questioned about his inconsistent identification as both Hispanic and non-Hispanic, Barberan responded that he "d[idn't] know" if he did that. Joint App'x at 502. Prior to filing his SAC, where he first mentioned his Hispanic national origin, Barberan's own prior filings and conduct cast serious doubt that he believes he was discriminated against based on his Hispanic national origin.

In sum, we hold that Barberan failed to establish a prima facie case because he did not provide non-speculative evidence that the Town discriminated against him based on his Hispanic national origin. Thus, the burden does not shift to the Defendants to provide evidence for Step Two.

## II. Steps Two and Three of *McDonell Douglas*

Even assuming *arguendo* that Barberan had made out a prima facie case of discrimination under Section 1983 and the NYSHRL, his discrimination claim fails at Steps Two and Three because the Town proffered legitimate, non-discriminatory reasons for terminating Barberan, and he has not presented evidence from which a rational

[5] We note that, attached to the 2021 EEOC charge, Barberan attached a news article that identified him as Hispanic, though nowhere in the charge itself did he allege national origin discrimination or identify as Hispanic.

jury could conclude that the reasons offered by the Town were a pretext for discrimination. The termination hearing focused on Barberan's 2021 conduct,[6] in addition to referring to his prior numerous infractions between 2013 and 2020. After the hearing, the Town's Board, agreeing with the hearing officer, voted to terminate Barberan's employment. Barberan does not point to any evidence suggesting that the hearing officer's conclusions of Barberan's misconduct or the Town Board's decision to terminate Barberan were a pretext for unlawful discrimination based on his Hispanic national origin. Indeed, most glaringly, Barberan does not even allege that any of the relevant decisionmakers in 2021—then-Lieutenant Rodriguez, the hearing officer, or the Town's Board—were aware of any of the Yonkers comments or his Hispanic national origin and could therefore harbor any discriminatory intent or engage in any discriminatory conduct. Therefore, even if Barberan had successfully established a prima facie case of discrimination, the Town has offered multiple legitimate, non-discriminatory reasons for terminating Barberan to satisfy its Step Two burden and Barberan has failed to adduce evidence from which a rational jury could find discriminatory intent at Step Three.

In reaching this determination, we are wholly unpersuaded by Barberan's argument that a jury could infer that the Town's reason for firing him was pretextual because he was punished more harshly than

[6] The hearing officer determined that Barberan's misconduct warranted termination based on the facts that in January 2021, Barberan: (1) deployed his taser in violation of Department rules; (2) arrested the driver at the scene of an accident without probable cause; (3) unconstitutionally searched the driver; (4) failed to adequately search the driver at Department headquarters; and (5) lied in an official police report and to investigators, supervisors, and the hearing officer. As detailed *supra* in Background Section I.A, Barberan also had a lengthy preexisting disciplinary record that reflected his difficulty with adhering to Department's rules and procedures.

other officers who engaged in similar conduct. We agree with the district court that Barberan failed to show "a reasonably close resemblance of the facts and circumstances[,]" *Graham v. Long Island R.R.*, 230 F.3d 34, 40 (2d Cir. 2000), between the alleged comparators to permit a reasonable jury to determine whether the comparators are "similarly situated in all material respects" to Barberan, *Shumway v. United Parcel Serv., Inc.*, 118 F.3d 60, 64 (2d Cir. 1997).

In sum, after reviewing the uncontroverted evidence in the record and finding any controverted evidence in Barberan's favor, no rational factfinder could find that the Town's reason for terminating Barberan was a pretext for unlawful discrimination. We conclude, therefore, that the district court correctly granted summary judgment on Barberan's Section 1983 and NYSHRL discrimination claims.

## CONCLUSION

We have considered all of Barberan's remaining arguments and conclude that they are meritless. For the forgoing reasons, we AFFIRM the judgment of the district court.